# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
March 11, 2025

Lyle W. Cayce
Clerk

No. 25-10359

In re David Wood,

*Movant*.

Motion for an order authorizing
the United States District Court
for the Northern District of Texas
to consider a successive 28 U.S.C. § 2254 application

UNPUBLISHED ORDER

Before Elrod, *Chief Judge*, Smith and Engelhardt, *Circuit Judges*.

Per Curiam:

David Wood was convicted and sentenced to death in 1992 following the brutal murder of six girls and young women in the desert northeast of El Paso. Now, just eight days before his scheduled execution, he moves for a stay of execution and for authorization to file a second or successive habeas petition per 28 U.S.C. § 2244.

Wood's motion seeks authorization on four claims: actual innocence, *Brady* violations, false testimony, and ineffective assistance of counsel. Only the *Brady* claim and part of the false testimony claim have a reasonable likelihood of meeting § 2244(b)'s strict threshold for authorization. We accordingly grant Wood's motion for authorization to file a second or successive habeas petition as to those claims, and we deny the motion as to the other

claims. Because we do not analyze the merits of Wood's claim at this stage, we deny his motion to stay his March 13, 2025, execution.

## I. Evidence at trial

We begin by summarizing the relevant evidence presented at Wood's capital murder trial. There were four key categories of evidence.

First, two of Wood's fellow prison inmates, James Sweeney and Randy Wells, testified that Wood confessed to committing the murders, including details of his *modus operandi*. Wells, for example, testified that Wood confessed to tying the girls to his pickup truck and to a tree, stretching the girls out, digging a grave, and raping them. Wells also testified that he covered some of Wood's tattoos with new ones because one girl had seen the tattoos and escaped. Evidence was presented at trial "that Wells testified in order to receive the benefit of a reduced sentence in another case, Sweeney had no agreement to receive any compensation for his testimony, but both men hoped to receive reward money offered by the El Paso police department."[1]

Second, Judith Kelling testified that Wood raped her. That evidence was admitted to prove identity and M.O. because "the location, time, and circumstances of the assault upon Kell[ing] were strikingly similar to that of the six murders at issue here."[2] Kelling testified that Wood, who was driving a tan pickup, asked if she needed a ride and drove her out to the desert in the area where the other girls were found. Wood tied her to the front of his truck

---

[1] *Wood v. Dretke*, No. 3:01-CV-2103-L, 2004 WL 1243169, at *27 (N.D. Tex. June 4, 2004) (magistrate judge's report and recommendation adopted in 2006 WL 1519969 (N.D. Tex. June 2, 2006)).

[2] *Wood v. State*, No. AP-71,594 (Tex. Crim. App. Dec. 13, 1995) (slip op. at 2) (direct appeal of conviction and sentence). The Court of Criminal Appeals ("CCA") mistakenly spelled Kelling's name as "Kelly."

and dug a hole behind some bushes. He then began ripping Kelling's clothes off and forced her to the ground. Wood suddenly heard voices, and he ordered Kelling back into the truck and drove to another part of the desert. Wood forced Kelling to remove her clothes, and then he gagged and tied her to a bush. Wood then raped Kelling after ordering her to say that she was 13 years old. Immediately afterwards, Wood began hearing voices again and drove away, leaving Kelling naked in the desert and telling her to "always remember, I'm free." The jury knew that Kelling was a prostitute and a heroin addict.

Third, Steve Robertson, a chemist at the Texas Department of Public Safety, testified that fibers found at one of the victim's graves matched fibers recovered from a vacuum cleaner bag that Wood and his girlfriend had left in their old apartment. Robertson testified that the number of fibers found at the gravesite and on the victim's shirt indicated that Wood had come in contact with her within hours of her murder. Wood also called his own expert at trial to testify about the fiber evidence.

Finally, witnesses testified that they saw the victims with Wood—or a man matching Wood's description—or getting into a beige pickup truck or red Harley motorcycle matching the description of Wood's vehicles.

## II. Statutory framework

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), federal courts lack jurisdiction over second or successive habeas applications unless certain exceptions apply. 28 U.S.C. § 2244(b)(1)-(2); *Blackman v. Davis*, 909 F.3d 772, 777 (5th Cir. 2018). At the threshold, any claim "that was presented in a prior [federal habeas corpus] application shall be dismissed." § 2244(b)(1). All other claims must likewise be dismissed unless, as relevant here,

> (i) [T]he factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and
>
> (ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

§ 2244(b)(2)(B)(i)–(ii).

A petitioner must satisfy *both* subsections—(b)(2)(B)(i) and (ii)—for authorization to issue. That's a high bar, and Congress designed it that way because "[f]ederal habeas review of state convictions . . . intrudes on state sovereignty to a degree matched by few exercises of federal judicial authority." *Harrington v. Richter*, 562 U.S. 86, 103 (2011) (quotation omitted). We have described (B)(ii)'s requirement "as a strict form of innocence, roughly equivalent to the Supreme Court's definition of 'innocence' or 'manifest miscarriage of justice' in *Sawyer v. Whitley*." *Johnson v. Dretke*, 442 F.3d 901, 911 (5th Cir. 2006) (cleaned up).

At this stage, Wood need only make a *prima facie* showing that he satisfies the requirements of subsections (b)(2)(B)(i) and (ii). § 2244(b)(3)(C). "'If in light of the documents submitted with the application it appears reasonably likely that the application satisfies the stringent requirement for the filing of a second or successive petition, we shall grant the application.'" *In re Campbell*, 750 F.3d 523, 530 (5th Cir. 2014) (quoting *In re Morris*, 328 F.3d 739, 740 (5th Cir. 2003) (per curiam)). Importantly, we do not rule on the ultimate merits at this stage; we merely "determine[] if this 'second or successive' habeas application deserves fuller review by the district court." *In re Will*, 970 F.3d 536, 541 (5th Cir. 2020).

When our court grants a motion to file, that grant is tentative; it is but the first step in a two-step process for authorization to file. *In re Swearingen*, 556 F.3d 344, 349 (5th Cir. 2009) (per curiam). "[B]efore addressing the

merits of the successive petition, the district court must independently determine whether the petition *actually satisfies* the stringent § 2244(b)(2) requirements." *Id.* at 347.

## III. Claim 1: actual innocence

Wood's first claim is that he is "actually innocent" of the crime. The Fifth Circuit, however, "'does not recognize freestanding claims of actual innocence on federal habeas review.'" *In re Raby*, 925 F.3d 749, 755 (5th Cir. 2019) (quoting *Swearingen*, 556 F.3d at 348). Thus, we decline to authorize that claim on the merits. *Id.*

"If, however, one (or more) of [Wood's] claims satisfies the dual requirements of § 2244(b)(2)(B), a credible showing of actual innocence would allow him to pursue the claim, despite a procedural bar" or a failure to satisfy AEDPA's statute of limitations. *Id.*; *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). Neither of those bars is relevant to our disposition of this motion, so we do not consider Wood's "actual innocence" evidence except to the extent it undergirds his other claims.

## IV. Claim 2: *Brady* violations

Wood seeks authorization for a claim that the state violated *Brady* by suppressing favorable, material evidence.[3] "There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999). Our inquiry into whether the allegedly suppressed informa-

---

[3] *See Brady v. Maryland*, 373 U.S. 83 (1963) (holding that a prosecutor's failure to turn over material, exculpatory evidence to the defendant violates due process).

tion is material is applied to "the suppressed evidence collectively, not item-by-item." *Spence v. Johnson*, 80 F.3d 989, 994 (5th Cir. 1996) (quotation omitted).

For us to grant the motion for authorization, Wood must make a *prima facie* showing that

> (1) his *Brady* claim was not presented in a prior application; (2) the factual predicate for the *Brady* claim "could not have been discovered previously through the exercise of due diligence"; and (3) he can establish by "clear and convincing evidence that, but for [the *Brady*] error, no reasonable factfinder would have found him guilty."

*Will*, 970 F.3d at 541 (quoting § 2244(b)(2)(B)(i)–(ii)). Wood has not previously asserted a *Brady* claim in a federal habeas petition, and the state does not dispute that. Thus, we inquire whether Wood has shown that he is "reasonably likely" to meet the "stringent requirements" of subsections (b)(2)(B)(i) and (ii). *Campbell*, 750 F.3d at 530 (cleaned up).

Wood asserts that the state suppressed four pieces of evidence in violation of *Brady*: (1) evidence suggesting that Michael Plyler, not Wood, sexually assaulted Kelling; (2) memos cataloguing police surveillance of Wood; (3) one of Kelling's interviews with the police; and (4) a failed polygraph test and biological samples taken from Sal Martinez.

A.

Wood avers that the state withheld favorable, exculpatory evidence that a man named Michael Plyler—not Wood—raped Kelling, that Plyler was known as "Skeeter," and that Plyler (like Wood) drove a beige Nissan pickup truck and a Harley motorcycle. As evidence for that assertion, Wood points to (1) a January 2025 sworn declaration of Ramona Dismukes; and (2) a folder on Michael Plyler created by the police task force that investigated the murders.

Dismukes states in her declaration that her sister-in-law, Cheryl, disappeared the same summer as the murder victims. Ex. 62 ¶¶ 1, 3. Dismukes heard rumors that someone who looked like her sister was seen "in the area of all the bars and where girls used to trick." Ex. 62 ¶ 9. Dismukes went to the area to inquire about Cheryl, and she met Judith Brown Kelling, who "was out [there] tricking." *Id.* Kelling told Dismukes that Michael Plyler, whom she knew as "Skeeter," was the man who raped her in the desert. Ex. 62 ¶ 10. Dismukes states that "I showed Judith a picture of David Wood and she'd never even seen him before. The cops had made a deal with Judith to drop charges against her in exchange for testifying against David. She didn't even know who David was." Ex. 62 ¶ 11. Dismukes "went to the El Paso police and told them about my conversation with Judith. The cops told me to stay away." Ex. 62 ¶ 13.

1. Innocence

Under § 2244(b)(2)(B)(ii), we assume that Wood can prove "the facts underlying the claim." Here, the "fact" underlying the claim is what *Dismukes*, not Kelling, stated.[4] Taking everything Dismukes said—*i.e.* the "facts underlying the claim"—as true, it proves that Dismukes told the state about what Kelling relayed to her. It does not prove the truth of what *Kelling* told Dismukes; it merely demonstrates that the state was on notice of what *Dismukes* relayed.

Taking the declaration as "proven," as we must under the statute, the state had information about Dismukes's coming forward about her conversa-

[4] *See Charboneau v. Davis*, 87 F.4th 443, 457 (9th Cir. 2023), *cert. denied*, 145 S. Ct. 179 (2024) ("[W]e conclude that the 'facts' that are to be taken as 'proven' under § 2244(b)(2)(B)(ii) are not the ultimate facts, but simply the evidentiary proffer underlying the claim—namely, that a particular witness made a given statement at a given time or that a specific document contains certain statements.").

tion with Kelling. The state received, from Dismukes, evidence that Kelling identified Plyler as her accuser and fabricated her testimony against Wood in exchange for a deal.

And there is more. The state had a task force folder on Michael Plyler that was created during its investigation of the murders. That folder indicates that Plyler had a beige Nissan pickup and a red Harley motorcycle, just like David Wood.[5]

Had the state turned over Dismukes's report and the Plyler folder to the defense, the defense would have called Dismukes as a witness, and her testimony would have severely undermined Kelling's credibility with the jury. To be sure, the jury knew that Kelling was a prostitute and a heroin addict, but it did *not* know that Kelling had identified another person as her attacker or that she had a deal with the state in exchange for her testimony.[6]

If Dismukes had testified to the facts she states in her declaration—that Kelling identified Plyler as her attacker but falsely framed Wood—that would have destroyed the state's case so thoroughly that every reasonable juror would have had a reasonable doubt about Wood's guilt. In a trial that the state described as "purely a circumstantial-evidence case," Kelling's testimony was a crucial linchpin. On direct appeal, the CCA explained that the Kelling evidence was "extremely important to the State's case":

> The identity of the murderer was a disputed issue at trial, obviously critical to both sides. Other evidence linking [Wood] to the murders consisted of the testimony of his former cellmates, circumstantial evidence and witness testimony placing [Wood]

[5] Wood received a copy of the task force folder on Plyler around 2009, and he asserts that his copy is "partially obscured and in black and white." Wood references the Plyler folder as "exhibit 63," but he failed to attach that exhibit to this motion for authorization.

[6] On cross-examination, Kelling stated that she had received no deal from the state.

> with one of the victims on the night of her disappearance. But [Wood] impeached his former cellmates with their lengthy criminal history and vigorously attacked their testimony as the product of deal-making with the State. The remaining evidence was not so compelling or undisputed as to render unnecessary the extraneous offense evidence. Under these circumstances the State's need for the evidence was great.

*Wood v. State*, No. AP-71,594 (Tex. Crim. App. Dec. 13, 1995) (slip op. at 7-8).[7]

Dismukes's testimony would have severely undermined the Kelling evidence, which was foundational to the state's circumstantial case against Wood. That is "clear and convincing evidence that, but for [the *Brady*] error, no reasonable factfinder would have found [Wood] guilty." § 2244(b)(2)(B)(ii).

2. Due diligence

For us to grant his motion for authorization, Wood must also make a *prima facie* showing that "the factual predicate for the claim could not have been discovered previously through the exercise of due diligence." § 2244(b)(2)(B)(i). He has done so.

Under AEDPA, "due diligence is measured against an objective standard, as opposed to the subjective diligence of the particular petitioner of record. The burden to make such a showing, of course, remains the petitioner's." *Johnson*, 442 F.3d at 908. "[T]he *Brady* and due diligence analyses are not collapsed where the record demonstrates that the defendant or defense counsel was aware of the potential *Brady* material but failed to pursue investigation of that ultimate claim." *Id.* at 910. "[T]rial counsel may rely,

---

[7] Based on the evidence presented at trial, the CCA characterized the Kelling evidence as "very compelling" and "unassailable." *Id.* at 7.

absent notice to the contrary, on representations by the prosecutor." *Will*, 970 F.3d at 543. Our inquiry is whether the record "includes evidence that would put a reasonable attorney on notice of the existence of [the evidence]." *Johnson*, 442 F.3d at 908.

On the record before us, Wood had no reason to know that Dismukes spoke with Kelling or with the police. He had no reason to know that Dismukes knew anything about Plyler or that she had any information that would have been helpful to his defense. And he had no reason to believe that there was significant exculpatory value to the task force records about Plyler until Dismukes came forward. In short, "a reasonable attorney would [not] have been put on notice of the existence" of the *Brady* evidence. *Blackman*, 909 F.3d at 779; *Johnson*, 442 F.3d at 908.

3. Statute of limitations

The state avers that Wood's claim does not satisfy AEDPA's statute of limitations in § 2244(d).

The text of § 2244(b)(3)(C) allows us to grant Woods's motion only if he makes a *prima facie* case of the requirements "*of this subsection*"—subsection (b). That is separate from subsection (d), which sets out the statute of limitations. *See In re McDonald*, 514 F.3d 539, 543 (6th Cir. 2008) ("[I]nvestigating compliance with the one-year statute of limitations outlined in 28 U.S.C. § 2244(d)—clearly a separate subsection from 28 U.S.C. § 2244(b)—is not within the purview of the court of appeals' consideration of applications requesting authorization to file a second or successive habeas corpus petition pursuant to 28 U.S.C. § 2244(b)."); *In re Rosado*, 7 F.4th 152, 156 (3d Cir. 2021) (Bibas, J.) (collecting cases) (holding that § 2244(b)(3)(C) does not *require* a court of appeals to consider § 2244(d)'s timeliness requirement).

We have held that we *may* consider the state's affirmative § 2244(d)

limitations defense in considering the § 2244 motion for authorization. *In re Burton*, 111 F.4th 664, 666 (5th Cir. 2024) (explaining that circuit precedent "permit[s] us to consider the timeliness of the successive petition"); *Campbell*, 750 F.3d at 532 n.9 ("We have the authority to deny a motion to authorize based on timeliness.").

But we have never in a published opinion held that that authority came from our gatekeeping authority under § 2244(b)(3)(C) or that we *must* consider the § 2244(d) timeliness bar.[8] Indeed, we have suggested otherwise. In *In re Henderson*, 462 F.3d 413, 417 (5th Cir. 2006) (per curiam), we granted a § 2244 motion when the prisoner had "made a *prima facie* showing of mental retardation," even though "[w]e note[d] that, unless the doctrine of equitable tolling applies, [his] successive petition is time-barred" under § 2244(d). We declined to address equitable tolling, finding it "premature for us to address it" and leaving the issue to the district court. *Id.*

We need not decide whether § 2244(b)(3)(C) requires Wood to establish a *prima facie* case that he satisfies the one-year limitations of § 2244(d). The key factual predicate of his *Brady* claim—the Dismukes declaration—is only about two months old.

[8] *See In re Salazar*, 443 F.3d 430, 434 n.2 (5th Cir. 2006) (per curiam) (leaving open the "question of whether, in our role as 'gatekeeper' under § 2244(b)(3)(C), we have the statutory authority to deny a motion for authorization solely on the basis of timeliness under § 2244(d)(1)(C)"); *Graham v. Johnson*, 168 F.3d 762, 787 n.20 (5th Cir. 1999) ("We express no opinion as to whether a court of appeals should consider the timeliness of a habeas application in deciding a prisoner's motion for authorization to file it."); *but see In re Wood*, 648 F. App'x 388, 390 (5th Cir. 2016) ("Finally, this court must determine whether Wood's claim is barred by the statute of limitations." (citing § 2244(d))); *Buchanan v. Lamarque*, 121 F. App'x 303, 316 (10th Cir. 2005) ("[H]e must also make a prima facie showing that the claims are not barred by . . . § 2244(d)(1). Although this requirement is not expressly set forth in § 2244(b)(3), we see no reason to authorize the filing of a second or successive petition in the absence of such a prima facie showing.").

B.

Wood has made a *prima facie* showing that he satisfies the requirements of § 2244(b) to file a second or successive habeas application asserting a *Brady* claim. We therefore grant his motion for authorization with respect to that claim.

We leave to the district court, if it authorizes the application, to determine in the first instance whether Wood's proffered evidence constitutes *Brady* material. Under *Brady*, the materiality of evidence is considered collectively, not item-by-suppressed-item. *Spence*, 80 F.3d at 994. Thus, all four of the alleged *Brady* violations would be part of the same claim for which we authorize filing.

V. False testimony

Wood next seeks authorization to file a claim that the state elicited testimony it knew to be false in violation of *Napue* and *Giglio*.[9] "To establish a due process violation under *Giglio*, a habeas petitioner must show '(1) the witness gave false testimony; (2) the falsity was material in that it would have affected the jury's verdict; and (3) the prosecution used the testimony knowing it was false.'" *Raby*, 925 F.3d at 756 (quoting *Reed v. Quarterman*, 504 F.3d 465, 473 (5th Cir. 2007)).

Wood alleges four grounds for his false-testimony claim: (1) Wells and Sweeney fabricated their testimony that Wood confessed; (2) Sweeney testified falsely about his financial motivation; (3) Kelling testified falsely that Wood sexually assaulted her and that she received a deal; and (4) Robertson, the state's fiber expert, testified falsely.

In his first federal petition, Wood raised a claim that Wells and

[9] *See Napue v. Illinois*, 360 U.S. 264 (1959); *Giglio v. United States*, 405 U.S. 150 (1972).

Sweeney fabricated their testimony about Wood's confession, so Wood is barred from reasserting that ground here. § 2244(b)(1). As to Wood's other allegations, Wood states a *prima facie* case that his false-testimony claim satisfies § 2244(b)(2)(B)(ii).

The key "facts underlying the [false testimony] claim" come from the same Dismukes declaration underlying the *Brady* claim. As discussed in part IV.A, Wood has stated a *prima facie* case that those facts, "if proven and viewed in light of the evidence as a whole," are "sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found [Wood] guilty." § 2244(b)(2)(B)(ii). Our due-diligence and statute-of-limitations analyses of the *Brady* claim likewise apply here.

Accordingly, we grant Wood's motion for authorization to file his false-testimony claim except to the extent he alleges Wells and Sweeney falsely testified about Wood's confession.[10]

VI. Ineffective assistance of counsel

Finally, Wood seeks authorization to file a claim that his counsel was ineffective for several reasons not previously alleged in his first federal habeas petition. But the factual predicate for each of the ineffective-assistance grounds Wood raises was available to him at trial or, at the very latest, when he filed his first federal petition. The claim is therefore barred under § 2244(b)(2)(B)(i), and we accordingly deny authorization to file it.

* * * * *

For the foregoing reasons, Wood's motion for authorization is

[10] For the avoidance of doubt, we do *not* hold that § 2244(b) bars Wood's argument that Sweeney testified falsely *as to his financial motives for testifying*.

GRANTED only as to his *Brady* claim and his false testimony claim.[11]

"We reiterate that this grant is tentative in that the district court must dismiss the motion that we have allowed the applicant to file, without reaching the merits, if the court finds that the movant has not satisfied the [28 U.S.C. § 2244] requirements for the filing of such a motion." *Swearingen*, 556 F.3d at 349.

We GRANT IN PART AND DENY IN PART Wood's motion for authorization to file a second or successive habeas application. Because we make no determination on the merits at this stage, Wood's motion to stay his execution is DENIED.

UNITED STATES COURT OF APPEALS FIFTH JUDICIAL CIRCUIT

**A True Copy**
**Certified order issued Mar 11, 2025**

**Clerk, U.S. Court of Appeals, Fifth Circuit**

[11] Authorization for the false testimony claim is granted only to the extent described in part V.